IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>NICKOLAS TREVON BRYANT,<br>    Defendant. | Case No. 4:18-cr-40026-JEH-1 |

**Order**

Now before the Court are Defendant Nickolas Bryant's *pro* se motion for early termination of supervised release, as well as his counseled amended motion for the same.[1] (D. 64 & 67). For the reasons stated *infra*, the motions are denied.

On May 22, 2018, a grand jury returned an Indictment, charging Bryant with possession with intent to distribute at least 28 grams of crack cocaine and being a felon in possession of a firearm. On February 19, 2019, Bryant pleaded guilty to both charges. Following this guilty plea, on July 25, 2019, Bryant was sentenced to 78 months in custody, followed by the 4-year statutory mandatory minimum term of supervised release.

Bryant completed his custodial sentence on November 10, 2022, and began his 4-year term of supervised release. On August 20, 2025, Bryant filed a *pro se* motion for early termination of his supervised release. The Federal Public Defender was subsequently appointed to review his case, and an amended motion for early termination was filed on September 3, 2025. The Court ordered the Government to respond to the motion, and on September 19, 2025, the

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

1

Government filed its response, opposing the early termination of Bryant's supervised release.

In support of his motion for early termination of supervised release, Bryant notes he has just over a year remaining on his four-year term. He has maintained employment, holding a Class A Commercial Driver's License and working currently as a truck driver for County Waste Systems, Inc., earning $23 per hour. Furthermore, Bryant asserts he has received a job offer from the Rock Island school district to work as a hall monitor, a position he feels well-suited for due to his stature and the district's disciplinary challenges. This opportunity is a primary motivation for his request, as according to Bryant his status as a supervisee is currently preventing him from advancing his career and pursuing certification as a para-professional educator. Although Bryant views supervision as a resource aiding his lawful assimilation into society and considers it only a minor inconvenience to continue for the remainder of his term, he argues that early termination would allow him to seize career opportunities and further his professional development.

Regarding his performance on supervised release, Bryant has had no positive drug tests, although he missed several uranalysis tests all of which he eventually made up within a few days. No other behavioral problems or rule violations have been reported, although Bryant has had several different jobs and residences since his release from custody. Finally, he argues that his guideline range would have been lower had he been sentenced today, and early termination would be in line with Judicial Conference policy for the early termination of supervised release.

In opposing Bryant's motion, the Government relies on several facts. It notes that Bryant has a Post Conviction Risk Assessment score categorized as Moderate, with a violence indicator at Category 3, the highest level. This score reflects a

significant risk of recidivism, which is further supported by Sentencing Commission data indicating a 69% recidivism rate for firearms offenders like Bryant. The supervising probation officer has expressed opposition to the early termination of supervised release, citing concerns over Bryant's lack of stable employment and his history of missed drug tests. Bryant's criminal history is extensive, including prior convictions for theft, resisting a peace officer, aggravated fleeing and eluding, delivery of a controlled substance, and being a felon in possession of a firearm.  Additionally, Bryant has misinterpreted studies, such as Thomas Cohen's, to suggest that early termination of supervision reduces recidivism, whereas the study actually indicates that those granted early termination were less likely to reoffend initially. These factors collectively argue against the early termination of Bryant's supervised release, according to the Government. Finally, the Government provides evidence that Bryant was not selected for the job as hall monitor which precipitated the filing of his motion in the first place.

      This Court has stated the now familiar standard for evaluating motions for early termination of supervised release numerous times in several cases. To briefly repeat again here, pursuant to 18 U.S.C. §3583(e)(1), after one year, a court can terminate supervised release early if it is warranted by the defendant's conduct and in the interest of justice. A defendant's behavior must demonstrate rehabilitation such that they no longer pose a danger to the community. *See United States v. Crisp*, 770 F. Supp.3d 1124 at *4-5. Once at least one year of a supervised release term has elapsed, a court must consider the factors set forth in 18 U.S.C §3553(a) as required by 18 U.S.C. §3583(e). Among these factors are: 1) the nature and circumstances of the offense and the history and characteristics of the defendant; 2) deterrence of future criminal conduct; 3) protecting the public from future criminal conduct; 4) providing the defendant with adequate resources

while on supervised release; 5) and the need to avoid unwarranted sentence disparities among defendants similarly situated who have been found guilty because of similar conduct.[2] 18 U.S.C. §3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(6).

After weighing all the relevant § 3553(a) factors, the Court concludes that the early termination of supervised release is not warranted. Significantly, Bryant himself views supervised release as a resource to help him assimilate back into society, indicating some need for the resources which the Probation Office can provide. Secondly, the primary factor in Bryant's seeking early termination—the pending job as a hall monitor—is no longer available to him. Given his acknowledgement that his conditions are otherwise minimally intrusive, the potential need for additional resources from Probation outweigh the benefits of early termination of supervised release.  This is even more so the case given Bryant's relatively unstable living and employment situations.  Although he has commendable generally maintained employment, his history suggests that his tenure with any one employer tends to be unstable.  Finally, Bryant committed his instant offense within one-year of completing a 3-year term of supervised release for a previous federal felony conviction for being a felon in possession of a firearm—a fact which weighs heavily against the early termination of supervised release in this case. His conviction on the gun charge in this case occurred after completing a 3-year term of supervised release for a previous federal felony gun charge, which is strong evidence that three years of supervised release may be insufficient to ensure rehabilitation.

---

[2] Sub-section 3553(a)(3) is excluded from factors a court must consider as set forth in §3583(e), and subsections (a)(4) and (a)(5) only have applicability to imposition and revocation of a supervised release term, not an early termination. Subsection (a)(7) relates to restitution, which is inapplicable in this case.

Accordingly, after considering all the arguments made by the parties and the relevant § 3553(a) factors, the finds the interests of justice are not served by the early termination of supervised release and denies the motions.

*It is so ordered.*

Entered on October 7, 2025

<u>s/Jonathan E. Hawley</u>
U.S. DISTRICT JUDGE